UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
UNITED STATES OF AMERICA            )
                                   )
     v.                             )    CR. No. 10-184-2 S
                                   )
JOSE ALIBAL SANTIAGO,               )
                                   )
          Defendant.                )
_____)

## OPINION AND ORDER

WILLIAM E. SMITH, United States District Judge.

Now before the Court is Defendant Jose Santiago's motion to suppress the second of two statements he made to United States Marshals Service ("USMS") Detention Enforcement Officer John Cinquegrana on December 7, 2010. (ECF No. 259.) For the reasons set forth below, that motion is DENIED.

I.   Facts[1]

Around September 22, 2010, Santiago surrendered to the Woonsocket Police Department and was placed in state custody. On December 7, 2010, Santiago was transferred to federal custody and arraigned on federal charges. Prior to his initial appearance, Santiago underwent a routine booking process, during which he was not advised of his Miranda rights. While he was

---

[1] The following facts are derived from a field report prepared by Cinquegrana. Santiago does not contest the facts set forth in that report, nor does he request an evidentiary hearing on this motion.

being booked, Santiago put his head down into his arms. Upon seeing this, Cinquegrana asked Santiago if he was alright. Santiago responded, "if the truck had stayed broken down on the Mass Pike none of this would have happend [sic]." (Ex. A to Def.'s Mot. to Suppress Evidence ("Field Report"), ECF No. 259-2.) Cinquegrana then asked Santiago what he had said. In response to this follow-up, Santiago stated that "the box truck broke down on the Mass Pike and just as we were gonna call it off the truck started." (Id.)

II. Discussion

The Supreme Court has held that, in a criminal case, the government "may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). The Court went on to specify the required procedural safeguards: "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. In the present case, the government concedes that Santiago was not provided with these warnings before he made the statements to Cinquegrana and that Santiago was in custody when he made those statements. Thus, the dispositive

2

issue is whether Santiago's statements were products of interrogation.

In the Miranda context, the Supreme Court has defined "interrogation" as "express questioning" or "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (internal footnotes omitted).  This inquiry "does not turn on the subjective intent of the particular police officer but on an objective assessment as to whether the police statements and conduct would be perceived as interrogation by a reasonable person in the same circumstances." United States v. Taylor, 985 F.2d 3, 7 (1st Cir. 1993).  Thus, "the mere fact that a police officer may be aware that there is a 'possibility' that a suspect may make an incriminating statement is insufficient to establish the functional equivalent of interrogation."  Id. at 8.

The Miranda Court expressly distinguished "statements obtained through interrogation" from "[v]olunteered statements." 384 U.S. at 478.  It explained that the latter "are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."  Id.  Here, Santiago concedes that his first statement to Cinquegrana was volunteered and, thus, does

3

not implicate the Miranda rule. After Santiago put his head in his hands, Cinquegrana asked if he was alright. In these circumstances, Cinquegrana had no reason to believe that this inquiry would elicit an incriminating response, and, therefore, his conduct did not amount to an interrogation. See State v. Canady, 998 A.2d 1135, 1145 (Conn. 2010) (holding that the question, "are you okay," was not an interrogation).

Santiago argues that his second statement to Cinquegrana presents a different situation. He suggests that Cinquegrana clearly heard Santiago's first statement, as evidenced by the fact that he recounted that statement in his field report. Assuming this is true, Santiago contends that Cinquegrana's ensuing request for him to repeat what he had said was reasonably likely to elicit an incriminating response and, for this reason, amounted to an interrogation.

The problem with Santiago's argument is that "courts have generally been quite willing to admit the answers to follow-up questions on the ground that these answers are a continuation of the volunteered statement." 2 Wayne R. LaFave et al., Criminal Procedure § 6.7(d) (3d ed. 2007); see also United States v. Rommy, 506 F.3d 108, 133 (2d Cir. 2007) ("[A] court may generally conclude that follow-up questions asking only for volunteered information to be repeated or spelled do not constitute interrogation."); United States v. Gonzales, 121 F.3d

4

928, 940 (5th Cir. 1997) ("[W]hen a suspect spontaneously makes a statement, officers may request clarification of ambiguous statements without running afoul of the Fifth Amendment."), overruled on other grounds, United States v. O'Brien, 130 S. Ct. 2169, 2180 (2010); Andersen v. Thieret, 903 F.2d 526, 528 (7th Cir. 1990) (finding no interrogation where, in response to the defendant's statement, "I stabbed her," the officer asked, "[w]ho?"); United States v. Rhodes, 779 F.2d 1019, 1032 (4th Cir. 1985) (holding that no interrogation occurred where, in response to the defendant's statement, "[y]ou can't take that," the officer asked, "[w]hy?"); United States v. Gauthier, Criminal No. 10-35-P-S, 2010 WL 3488665, at *4 (D. Me. Aug. 30, 2010), report and recommendation adopted, Civil No. 10-35-P-S, 2010 WL 3927312 (D. Me. Oct. 5, 2010) ("Law enforcement officers may . . . ask a defendant in custody follow-up questions in order to clarify a statement volunteered by the defendant."); Tolliver v. Sheets, 530 F. Supp. 2d 957, 990 (S.D. Ohio 2008), aff'd, 594 F.3d 900 (6th Cir. 2010) (holding that the detective's question, "[i]t's all her blood?," asked immediately after the defendant stated, "it's all hers," did not amount to interrogation).

Follow-up questions that "expand the scope of the statement previously made" may, however, constitute interrogation. 2 Criminal Procedure § 6.7(d). Here, Cinquegrana's question

clearly did not expand the scope of Santiago's first statement. Rather, it simply asked Santiago to repeat what he had already volunteered. See United States v. Hicks, 546 F. Supp. 2d 1378, 1383 (N.D. Ga. 2008) (holding that a question asking the defendant "to repeat his preceding assertion that the pistol was his" did not constitute interrogation); Stone v. State, 900 S.W.2d 515, 519 (Ark. 1995) (holding that the officer's question, "[w]hat did you say?," was "a neutral inquiry intended to clarify what had already been said and therefore a continuation of [the defendant's] confession").

In an effort to counter this authority, Santiago relies on United States v. McLean, 409 F.3d 492 (1st Cir. 2005). In that case, the defendant made several "unprompted statements" to the authorities and, while being booked, referred to an individual named Tommy. An officer responded by asking, "[w]ho is Tommy?," after which the defendant provided additional incriminating information. Id. at 498. The district court held that everything said prior to the Tommy question was voluntary, but it excluded the statements made following that question. Id. The First Circuit affirmed the district court's decision to admit the former statements. Id. at 498-99. It did not have any occasion to rule on the admissibility of the statements made after the Tommy question. Moreover, even if the First Circuit had held those statements inadmissible, the present case is

6

distinguishable. Arguably, the question, "who is Tommy?," expanded the scope of the defendant's prior volunteered statements. By contrast, the question at issue here merely asked Santiago to repeat what he had already voluntarily said.

Santiago also cites State v. Walton, 41 S.W.3d 75, 85 (Tenn. 2001), where the court stated that "police officers are permitted to ask follow-up questions to a defendant's voluntary statement without first having to give Miranda warnings, unless the officer has reason to believe that the follow-up questions are 'reasonably likely to elicit an incriminating response.'" While this language appears to announce a broader exclusionary rule than that endorsed by the above-cited cases, Walton's actual holding is consistent with these other decisions. The follow-up questions at issue in Walton, unlike Cinquegrana's question in this case, expanded the scope of the defendant's statements. For example, after the defendant said he knew the location of several stolen items, an officer asked whether the defendant could show the property in question to the police. Id. at 78-79. This question could be reasonably anticipated to elicit additional incriminating information beyond what the defendant had already provided. In any event, to the extent that Walton does stand for a broader interpretation of the Miranda rule, it is unpersuasive. "Miranda covers only police conduct likely to be coercive when coupled with defendant's

7

custody, which cannot be said of a question that does nothing more than seek clarification of what the defendant has already volunteered."[2]  2 Criminal Procedure § 6.7(d).

III. Conclusion

For the foregoing reasons, Defendant's Motion to Suppress Evidence is DENIED.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: May 10, 2013

---

[2] Because Santiago's statements were not products of interrogation, the Court need not address the applicability of the so-called "booking exception" to the Miranda rule.

8