```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
```

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
    v.                              )    CR. No. 10-184-2 S
                                    )
JOSE ALIBAL SANTIAGO,               )
                                    )
         Defendant.                 )
_____)

### SEALED ORDER

WILLIAM E. SMITH, United States District Judge.

Now before the Court are several motions *in limine* filed by Defendant Jose Santiago. (ECF Nos. 185-204.) At an August 13, 2013 in chambers conference, the parties indicated that all but two of the motions have been mooted by the government's responses and/or Santiago's co-defendant Jason Pleau's recent guilty plea. This order addresses the two remaining motions.

I.  Background

On December 14, 2010, Santiago, along with his two co-defendants Jason Pleau and Kelley Lajoie, was indicted and charged with: (1) conspiracy to commit robbery affecting commerce, 18 U.S.C. § 1951(a); (2) robbery affecting commerce, *id.*; and (3) using, carrying, possessing, and discharging a firearm during and in relation to a crime of violence, death resulting, 18 U.S.C. § 924(c)(1)(A), (j)(1). (ECF No. 13.)

These charges stem from the September 20, 2010 robbery and fatal shooting of David Main.

II. Discussion

    A.   Prior Bad Acts

On July 9, 2012, the government filed notice of its intent to introduce evidence of prior bad acts pursuant to Rule 404(b) of the Federal Rules of Evidence. (ECF No. 124.) The government's notice encompasses two particular prior bad acts: (1) an August 8, 2010 armed robbery of Chan's Restaurant allegedly perpetrated by Pleau, Santiago, and Lajoie, among others and (2) an attack by Santiago on Lajoie that allegedly occurred later that same day. Subsequently, Santiago filed a motion <u>in limine</u> seeking to preclude introduction of any evidence relating to these prior bad acts. (ECF No. 202.)

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence may, however, be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The First Circuit "employs a two-part test in evaluating the admissibility of evidence under Rule 404(b)." <u>United States v. Appolon</u>, No. 11-1627, 2013 WL

1798339, at *8 (1st Cir. Apr. 29, 2013). First, the court must ask "whether the proffered evidence . . . possesses special relevance." Id. (internal citation and quotation marks omitted). In other words, to be admissible, the evidence must be relevant to some issue other than the defendant's criminal propensity. In this regard, it is important to note that Rule 404(b)'s list of permissible uses of prior bad acts evidence is not exhaustive. See United States v. Landry, 631 F.3d 597, 602 (1st Cir. 2011). If the court finds special relevance, it must proceed to "apply Rule 403 to ascertain whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice." Appolon, 2013 WL 1798339, at *8.

    1.   Chan's Robbery

In a conspiracy case such as this one, evidence of a defendant's prior bad acts may be admissible "to explain the background, formation, and development of the illegal relationship, and, more specifically, to help the jury understand the basis for the co-conspirators' relationship of mutual trust." United States v. Green, 698 F.3d 48, 55 (1st Cir. 2012) (internal citation and quotation marks omitted) (upholding admission of testimony regarding the defendant's prior drug dealing where the defendant was charged with conspiring to possess drugs with intent to distribute); see also United States v. Hadfield, 918 F.2d 987, 994 (1st Cir. 1990)

("We have . . . upheld the admission of past convictions to prove a conspiracy or common scheme where the earlier crime involved the same participants as the charged crime."); United States v. Gonzalez-Sanchez, 825 F.2d 572, 581 (1st Cir. 1987) ("We have often upheld the admissibility of evidence of past crimes in later trials for conspiracies to commit identical or similar crimes.  In such circumstances, the evidence of past similar crimes is helpful to show [the defendant's] mode of operation, intent, and knowing participation in the alleged conspiracy.  The relevance is especially strong when, as in this case, the prior crimes involved the same participants." (internal footnotes omitted)).

Here, the Chan's robbery allegedly involved all three individuals who were charged in the present case.  Moreover, it occurred less than two months before the events giving rise to the instant charges.  See Landry, 631 F.3d at 602 (holding that, in assessing special relevance, courts should consider "the temporal relationship of the other act and the degree of similarity to the charged crime").  For these reasons, evidence of the Chan's robbery is relevant to explain the background of the relationship between Pleau, Santiago, and Lajoie.  Criminal conspiracies do not materialize out of thin air.  Thus, the fact that the three alleged co-conspirators had a pre-existing

relationship makes it more likely that they conspired together to rob Main.

The Chan's evidence is also probative of Santiago's <u>mens rea</u> regarding the charged robbery and use of a firearm. Santiago, who, according to the government, acted as Pleau's getaway driver, could conceivably claim that he merely gave Pleau a ride and lacked any knowledge of Pleau's criminal activity. In these circumstances, the government could use evidence of Santiago's participation in the Chan's robbery to refute the claim "that his presence in the vehicle was a mere coincidence." <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008) (upholding admission of evidence of the defendant's participation in two prior bank robberies because those robberies "were especially relevant to prove that, contrary to [the defendant's] defense theory, he was not innocently present in the getaway car with two bank robbers, caught in the wrong place at the wrong time, but that he was in fact one of the participants in the robbery").

The conclusion that the Chan's evidence possesses special relevance does not, however, end the inquiry. The Court may exclude prior bad acts evidence, notwithstanding its special relevance "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The First Circuit has observed "a tension between Rules 404(b) and

403." United States v. Varoudakis, 233 F.3d 113, 123 (1st Cir. 2000). It explained:

> The more similar the prior bad act evidence is to the charged crime, the more likely it is to be deemed relevant under 404(b). Yet the more the prior bad act resembles the crime, the more likely it is that the jury will infer that a defendant who committed the prior bad act would be likely to commit the crime charged. This is precisely the kind of inference that Rule 403 guards against.

Id. (internal citation omitted). Here, given the similarity between the Chan's robbery and the charged crime, there is at least some danger that the jury will use the Chan's evidence to infer Santiago's propensity to commit robberies. However, this danger of unfair prejudice does not substantially outweigh the evidence's strong probative value. The circumstances of the Chan's robbery are not highly inflammatory, especially when compared to the allegations in the present case. Indeed, no one was killed or even seriously injured in connection with that robbery.

Santiago's residual arguments are also unavailing. First, Santiago contends that evidence of the Chan's robbery is inadmissible because that incident "remains an unsolved crime." (Def., Jose Santiago's Mot. in Limine to Exclude Noticed Prior Bad Act Evidence Pursuant to Federal Rule of Evidence 404(b) 4, ECF No. 202.) However, the First Circuit has unequivocally stated that Rule 404(b) "permits the introduction of uncharged

bad act evidence if the evidence is relevant for purposes other than proof of a defendant's bad character or criminal propensity." United States v. Escobar-de Jesus, 187 F.3d 148, 169 (1st Cir. 1999) (emphasis added). Second, Santiago suggests that the government's notice was insufficient because it failed to explain the government's theory as to why evidence of the enumerated prior bad acts is admissible. Rule 404(b) requires the government to "provide reasonable notice of the general nature" of any prior bad acts evidence it intends to introduce at trial. Fed. R. Evid. 404(b)(2)(A) (emphasis added). Santiago cites no authority for the proposition that the government was also obligated to disclose its theory of admissibility. In any event, the government's theories were included in its response to Santiago's motion, filed more than three months in advance of trial.

    2.   Santiago's Assault on Lajoie

The government's 404(b) notice also includes an attack perpetrated by Santiago against Lajoie on August 8, 2010, after the Chan's robbery. Santiago allegedly beat Lajoie, placed a gun in her mouth, and threatened to kill her. Lajoie responded by calling the Woonsocket Police. When officers arrived at Lajoie's apartment, they located a camouflage ski mask matching that worn by one of the assailants during the earlier robbery.

Officers also found a second ski mask, a loaded magazine for a nine millimeter pistol, and a box of nine millimeter ammunition.

Lajoie is expected to testify that she agreed to participate in the charged crime partially out of fear of Santiago.  In fact, prior to the robbery of Main, Pleau allegedly reminded Lajoie of Santiago's assault and warned her that if she did not go along with the plan, things could get even worse.  Therefore, Lajoie's testimony regarding the assault is relevant, as it explains how she came to be involved in the charged crime.  See United States v. Fields, 871 F.2d 188, 194 (1st Cir. 1989) ("[W]hen it is difficult to draw a line between the crime charged and other events with which it is inextricably intertwined, such evidence is proper if linked in time and circumstance with the crime charged, or if it is necessary to complete the picture of the crime on trial." (internal citation and quotation marks omitted)); United States v. D'Alora, 585 F.2d 16, 20 (1st Cir. 1978) ("Evidence of prior conduct is admissible to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." (internal citation and quotation marks omitted)); 1 McCormick on Evidence § 190 (7th ed. 2013) (stating that prior bad acts evidence should be admissible to complete the story "when the material in question is necessary to a fair understanding of the behavior of individuals involved in the

criminal enterprise or the events immediately leading up to them"). Testimony regarding Pleau's warning is also directly relevant to the existence of a conspiracy.

However, Rule 403 presents a significant obstacle to the admissibility of the details of Santiago's assault, which appear to be highly inflammatory. Santiago is alleged to have put a gun in Lajoie's mouth and threatened to kill her. Thus, while Lajoie's testimony on this issue has significant probative value, it also carries the potential for unfair prejudice. Lajoie's motivation for joining the conspiracy is an integral element of the story she will tell to the jury. For this reason, she will be permitted to testify to Pleau's threat prior to the robbery. Moreover, in order to explain the meaning of this threat, Lajoie may also testify generally that Santiago assaulted her and that she reported the assault to the police. However, Lajoie will be prohibited from relaying to the jury on direct examination the inflammatory details of Santiago's attack. The danger that these details will unfairly prejudice the jury against Santiago substantially outweighs any marginal probative value they may have as compared to a more general statement that Santiago had physically assaulted Lajoie. (If the defense opens the door to the details of the assault on cross examination, however, the Court may reconsider the matter.

Counsel for the government should alert the Court if he or she believes this has occurred).

  B. Testimony of Tanya Rivera

  Before the grand jury, Tanya Rivera, Pleau's girlfriend, testified that Pleau confessed his involvement in the robbery to her. More specifically, Pleau told Rivera that he and Santiago "had robbed somebody" and, when "things went bad," Pleau had to shoot someone. (Def., Jose Santiago's Mot. in Limine to Limit the Testimony of Tanya Rivera 2, ECF No. 189.) Santiago moves to preclude Rivera from relaying these statements to the jury at trial.

  The government provides a detailed description of the facts surrounding Pleau's alleged confession. After the robbery, Pleau, Santiago, and Lajoie met at the apartment shared by Pleau and Rivera. Upon Pleau's arrival, he accompanied Rivera to the bedroom, while Santiago and Lajoie waited in the living room. It was here that Pleau made the statements at issue. After Pleau's confession, he and Rivera joined Santiago and Lajoie in the living room, where the group watched television coverage of the robbery. Rivera and Lajoie observed Pleau remove the stolen money from the bank deposit bag, count it, and hand Santiago his cut. Pleau also dumped the clothes he had worn into a garbage bag. Santiago threw his sneakers into the same bag. Pleau took a bottle of bleach from the kitchen and then left the apartment

along with Santiago and Lajoie. The three proceeded to clean the white box truck that was used during the robbery. They also discarded the garbage bag containing Pleau's clothes and Santiago's shoes. Later that day, after Pleau returned to his apartment, Rivera drove Pleau to a nearby park, where he dumped the deposit bag and gun into a river. The following night, when Pleau and Rivera learned the police were looking for Pleau, Rivera drove him to a bus station, so that he could escape to New York. In its order denying Defendants' motions to sever, the Court held that Pleau's statements to Rivera were "likely independently admissible against Santiago." (Sealed Opinion and Order 20, ECF No. 236.)

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that a statement is not hearsay if it "is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). The applicability of this subsection:

> turns on four elements: (1) the existence of a conspiracy, (2) the defendant's membership in that conspiracy, (3) the declarant's membership in the same conspiracy, and (4) that the statement be made in furtherance of the conspiracy. A district court faced with a challenge to the admission of a co-conspirator's statement must provisionally admit the statement and then wait until the end of the trial to consider whether, in light of all the evidence, [these] four conditions are satisfied by a preponderance of the evidence.

United States v. Rivera-Donate, 682 F.3d 120, 131 (1st Cir. 2012) (internal citation and quotation marks omitted) (alteration in original).  Here, Santiago argues that the fourth element is not satisfied.  The First Circuit has made clear that, in order to qualify as in furtherance of the conspiracy, "a statement need not be necessary or even important to the conspiracy, or even made to a co-conspirator, as long as it can be said to advance the goals of the conspiracy in some way." United States v. Martinez-Medina, 279 F.3d 105, 117 (1st Cir. 2002).

As Santiago correctly points out, "conversations that represent mere idle chatter or which are mere narratives of past conduct are not in furtherance of the conspiracy." United States v. Ebron, 683 F.3d 105, 136 (5th Cir. 2012) (internal citation and quotation marks omitted).  However, Pleau's statements to Rivera cannot be fairly characterized as a mere narrative of past events.  After the conversation occurred, Pleau and his co-conspirators were able to use the apartment he shared with Rivera to divide the proceeds of the robbery.  See United States v. Mojica-Baez, 229 F.3d 292, 304 (1st Cir. 2000) (affirming the district court's finding that "in addition to the robbery, the conspiracy included the division and hiding of the money").  Moreover, Pleau's confession to Rivera allowed him to enlist her assistance in covering up the robbery.  For the

purposes of Rule 801(d)(2)(E), a conspiracy does not necessarily include concealment of the underlying crime. See id. (citing Krulewitch v. United States, 336 U.S. 440, 443-44 (1949)). Here, however, the concealment efforts occurred in the immediate aftermath of the robbery and reflected concerted action by the co-conspirators. The facts included in the government's memorandum, if proved, are sufficient to establish a conspiracy to conceal by a preponderance of the evidence. See United States v. Medina, 761 F.2d 12, 18 (1st Cir. 1985) ("[T]he conspiracy continued so long as the conspirators were acting together to destroy incriminating evidence."); 2 McCormick on Evidence § 259 (7th ed. 2013) ("Under some circumstances, the duration of the conspiracy is held to extend beyond the commission of the principal crime to include closely connected disposition of its fruits or concealment of its traces . . . ." (internal footnote omitted)). Because Pleau's statements to Rivera facilitated the division of the co-conspirators' profits and allowed the co-conspirators to enlist Rivera's assistance in concealing their criminal activity, it appears that those statements were made in furtherance of the conspiracy.

Santiago's additional argument that Pleau's statements were not in furtherance of the conspiracy because they were made to Rivera, who was not a part of the charged conspiracy, is meritless. First, as described above, there is ample evidence

that Rivera did ultimately join the conspiracy. Second, "statements made in the course of a discussion between a coconspirator and a third party who is a stranger to the conspiracy are admissible under Rule 801(d)(2)(E), provided that they meet the Rule's foundational requirements." United States v. Piper, 298 F.3d 47, 53 (1st Cir. 2002). Thus, whether or not Rivera was part of the conspiracy is of no consequence.

In addition to his hearsay argument, Santiago contends that admission of Rivera's testimony regarding Pleau's statements would infringe on his Sixth Amendment confrontation rights. However, as the First Circuit has clearly explained:

> The Bruton/Richardson framework presupposes that the aggrieved co-defendant has a Sixth Amendment right to confront the declarant in the first place. If none of the co-defendants has a constitutional right to confront the declarant, none can complain that his right has been denied. It is thus necessary to view Bruton through the lens of Crawford and Davis. The threshold question in every case is whether the challenged statement is testimonial. If it is not, the Confrontation Clause "has no application."

United States v. Figueroa-Cartagena, 612 F.3d 69, 85 (1st Cir. 2010) (quoting Whorton v. Bockting, 549 U.S. 406, 420 (2007)). The statements at issue here are not testimonial. See Rivera-Donate, 682 F.3d at 132 n.11 ("[S]tatements made during and in furtherance of a conspiracy are not testimonial . . . ." (internal citation and quotation marks omitted)). For this reason, Santiago's Sixth Amendment argument fails.

III. Conclusion

For the foregoing reasons, Santiago's motion <u>in limine</u> to exclude prior bad acts evidence (ECF No. 202) is GRANTED in part and DENIED in part. His motion to limit the testimony of Tanya Rivera (ECF No. 189) is DENIED.

IT IS SO ORDERED.


*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: August 20, 2013