UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                              )
UNITED STATES OF AMERICA      )
                              )
      v.                      )        C.R. No. 10-184 WES
                              )
JOSE ALIBAL SANTIAGO,         )
                              )
              Defendant.      )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, United States District Judge.

   This matter is before the Court on a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 443, "First Motion to Vacate") filed by Defendant Jose Alibal Santiago.  For the reasons stated herein, the First Motion to Vacate is DENIED and DISMISSED.  Additionally, all remaining motions (ECF Nos. 493, 497, 499, 504, 507, 509, 513, 514, 524) are DENIED for the reasons stated herein.

## I.   Background[1]

   Santiago was indicted on December 14, 2010, and charged with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C.

---

   [1] The information in the Background section is taken from the First Circuit's opinion denying Santiago's direct appeal, United States v. Santiago, 775 F.3d 104 (1st Cir. 2014), the Motion to Vacate, and the Court's docket.  A complete description of the events preceding Santiago's arrest can be found in the First Circuit's opinion.  See id. at 105-06.

§ 1915(a) (Count I); Hobbs Act robbery, in violation of 18 U.S.C. §§ 1915(a) and 2 (Count II); and using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c), (j)(1), and 2 (Count III).  Santiago pleaded guilty to all charges and was sentenced on February 13, 2014, to concurrent terms of 240 months imprisonment on the Hobbs Act counts and a consecutive term of 240 months imprisonment on the firearm count, followed by five years of supervised release.  Judgment (ECF No. 405) entered on February 19, 2014.

That same day, Santiago filed a Notice of Appeal (ECF No. 407), raising two issues: whether the record reflected that the Court and defense counsel had fully advised him of the mandatory consecutive sentence required by 18 U.S.C. § 924(j); and, relatedly, whether he would have pleaded guilty had he known about the consecutive sentence.  The Court of Appeals for the First Circuit thereafter affirmed Santiago's conviction and sentence.  United States v. Santiago, 775 F.3d 104, 109 (1st Cir. 2014).  Santiago did not seek further review, and his conviction became final on March 24, 2015.

On March 15, 2016, Santiago timely filed the First Motion to Vacate, with supporting memorandum (ECF No. 443-1, "Santiago Mem.").  On June 23, 2016, he filed a second motion to vacate (ECF No. 450, "Second Motion to Vacate") based on the Supreme Court's

2

ruling in <u>Johnson v. United States</u>, 135 S. Ct. 2551, 2563 (2015) (holding that imposing increased sentences under the "residual clause" of the Armed Career Criminal Act ("ACCA") violates the constitutional guarantee of due process). By Order dated July 1, 2016 (ECF No. 454), the Court held the Second Motion to Vacate in abeyance pending clarification as to the applicability of <u>Johnson</u> to this matter. After the First Circuit's decision in <u>United States v. Garcia-Ortiz</u>, 904 F.3d 102, 109 (1st Cir. 2018) ("<u>Garcia IV</u>") (holding that Hobbs Act robbery categorically constitutes a "crime of violence" under the ACCA's "force clause"), the Court, in an Order dated October 4, 2018 (ECF No. 496), denied the Second Motion to Vacate.

The still-pending First Motion to Vacate is addressed herein, as are several additional motions that Santiago has filed.

## II. Legal Standards

### A. Standard of Review

Section 2255 provides in relevant part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

3

28 U.S.C. § 2255(a).   Generally, the grounds justifying relief under 28 U.S.C. § 2255(a) are limited, and a court may grant relief if it finds a lack of jurisdiction, a constitutional error, or a fundamental error of law.   United States v. Addonizio, 442 U.S. 178, 185 (1979).   "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice."   Id. (internal quotation marks omitted). Moreover, § 2255 is not a substitute for direct appeal.   Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994) (citing cases).

**B.   Strickland**

The Sixth Amendment guarantees defendants the right to effective assistance of counsel.   Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).   That said, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991).

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must show:

(1)   that his counsel's performance fell below an objective standard of reasonableness; and

4

> (2)   a reasonable probability that, but for counsel's
>        unprofessional errors, the result of the proceeding
>        would have been different.

Strickland, 466 U.S. at 687-88, 694.  In assessing the adequacy of counsel's performance, a defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'"  United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010) (quoting Strickland, 466 U.S. at 690).

As for the prejudice requirement under Strickland, a "reasonable probability is one sufficient to undermine confidence in the outcome.  In making the prejudice assessment, [the court] focus[es] on the fundamental fairness of the proceeding."  Id. (internal citations and quotation marks omitted).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  Strickland, 466 U.S. at 687; see also Reyes-Vejerano v. United States, 117 F. Supp. 2d 103, 106 (D.P.R. 2000) ("The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one.").  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

Strickland instructs that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689; see also id. ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Moreover, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Finally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.

The same principles apply in the context of guilty pleas. See <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985).  The <u>Hill</u> Court held that "the two-part <u>Strickland v. Washington</u> test applies to challenges to guilty pleas based on ineffective assistance of counsel."  <u>Id.</u> at 58; <u>see also</u> <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 n.12 (2010) ("In <u>Hill</u>, the Court recognized—for the first time—that <u>Strickland</u> applies to advice respecting a guilty plea."). The first prong of the <u>Strickland</u> test is "nothing more than a restatement of the standard of attorney competence" described above.  <u>Hill</u>, 474 U.S. at 58.

> The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

<u>Id.</u> at 59; <u>see also</u> <u>Lee v. United States</u>, 137 S. Ct. 1958, 1965 (2017)(quoting <u>Hill</u>); <u>Lafler v. Cooper</u>, 566 U.S. 156, 163 (2012)("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."); <u>Padilla</u>, 559 U.S. at 372 (noting that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances").  These predictions, as the Supreme Court

reiterated in Hill, should be made objectively.  See 474 U.S. at 59-60.  "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."  Lee, 137 S. Ct. at 1967.

## III. Discussion

### A.    First Motion to Vacate

Santiago presents three grounds for relief in the First Motion to Vacate.   First, he argues that trial counsel provided ineffective assistance by failing to object at sentencing that Santiago's conviction under 18 U.S.C. § 924(j) did not provide for a consecutive sentence.  First Mot. to Vacate 3; Santiago Mem. 3. Second, Santiago contends that counsel was ineffective at sentencing for failing to argue that he was not a career offender. First Mot. to Vacate 5; Santiago Mem. 9.  Third, Santiago asserts that counsel provided ineffective assistance by failing to argue that a Hobbs Act robbery or conspiracy is not a crime of violence as defined under 18 U.S.C. § 924(c)(3)(A) and (B).[2]  First Mot. to Vacate 8; Santiago Mem. 14.

_____

[2] In a footnote, Santiago states that he "makes a separate claim under the new ruling in Johnson that § 924(c)(3)(B) is unconstitutionally vague and cannot be used to determine if a Hobbs Act robbery is a 'crime of violence.'"  Santiago Mem. 14 n.1.

Santiago first claims that counsel provided ineffective assistance by failing to object at sentencing that his sentence under 18 U.S.C. § 924(j) did not provide for a consecutive sentence. Mot. to Vacate 3; Santiago Mem. 3. Santiago contends that counsel "fail[ed] to argue against and, or object to the Court's ability to sentence [him] to a consecutive twenty years under §924(j), on Count Three, when several sister circuits had made prior rulings stating that it wasn't a mandatory sentence to be applied consecutively." Santiago Mem. 3 (citing United States v. Berrios, 676 F.3d 118 (3d Cir. 2012); United States v. Julian, 633 F.3d 1250 (11th Cir. 2011)).

During the change of plea hearing, the government described the maximum allowable statutory penalties:

On Count III, the [maximum[3]] statutory penalty is death; however, the government had not sought to seek a sentence

---

According to Santiago, "this claim is not under the ineffective assistance argument. This is based on a new rule of law outlined in Pakala v. United States, No. 15-1799 (1st Cir. 2015)." Id.

Even if the argument were fully developed, and it is not, it has been foreclosed by the Court's decision denying the Second Motion to Vacate. In its October 4, 2018, Order denying the Second Motion to Vacate, the Court found, based on the First Circuit's holding in Garcia IV, 904 F.3d at 106, that "the offense of Hobbs Act robbery . . . constitutes a 'crime of violence' under section 924(c)'s force clause," Order at 1 (alteration in original), and that "Santiago was properly sentenced under 28 U.S.C. § 924(c) . . . ," id. For that reason, the Court need not address this portion of Santiago's argument.

[3] Here, the government referred to the "mandatory statutory penalty," Tr. of Sept. 5, 2013, Change of Plea Hearing (ECF No.

> of death and accordingly the maximum available penalty
> on this count is a term of years and up to life
> imprisonment. . . .
>
> Were the sentences for all the counts imposed
> consecutively, the maximum statutory penalties would be
> life plus 40 years . . . .

Tr. of Sept. 5, 2013, Change of Plea Hr'g (ECF No. 381, "Plea Hr'g. Tr.") at 6. Santiago agreed that he understood that those were the maximum penalties that could be imposed under the statutes. Id. at 7.

On direct appeal, Santiago "[sought] to vacate his plea on the grounds that, at the change-of-plea hearing, he was informed of the statutory maxim[um] for the three charges, but was not informed of the mandatory minimum for Count Three nor the requirement that the Count Three sentence be served consecutively." Santiago, 775 F.3d at 106. The government agreed that an error had occurred. Id. However, the First Circuit rejected Santiago's contention that, but for the error, there was a reasonable probability that he would not have pleaded guilty. See id. at 107, 109. The court found that, "[c]onsidered cumulatively, the record clearly shows that Santiago was aware at the time of that hearing of the mandatory ten-year minimum for

---

381, "Plea Hr'g. Tr.") 6; however, it is clear from the context and the government's entire statement that the government misspoke.

Count Three and that it was consecutive." Id. at 107. The court then summarized the evidence on which its conclusion was based, including a letter in which Santiago speculated about his possible sentence. See id. The appellate court also noted that at the change of plea hearing the trial court asked Santiago "whether he had spoken with his lawyer 'about the Federal Sentencing Guidelines and how they [were] likely to apply in this case,' to which Santiago answered, 'Yes.'" Id. The First Circuit stated that "[t]he likely application of the Guidelines would assuredly have included the consecutive ten-year mandatory minimum for Count Three." Id. "The district court also warned Santiago that the Presentence Investigation Report (PSR) 'is a very important document . . . in determining what the appropriate sentence is,' a comment which Santiago indicated he understood." Id. (alteration in original). Moreover, "[a]t no point during the sentencing hearing did Santiago express surprise at the application of the Guidelines, the consecutive sentences, or his ultimate sentence," id. at 108, even after the Court explicitly mentioned the ten-year consecutive mandatory minimum for Count Three, see id.[4] Thus, the

_____

[4] After stating the total offense level and Santiago's criminal history calculated under the United States Sentencing Guidelines ("USSG" or "Guidelines"), the Court summarized the minimum penalties Santiago faced under the USSG:

First Circuit found that Santiago's substantial rights were not affected by the trial court's error and affirmed his conviction. Id. at 108-09.

It is true that counsel did not raise the issue of the consecutive mandatory minimum on Count III during the change of plea hearing.  See generally Plea Hr'g. Tr.  It is also true that, although other objections were made to the PSR, none were made to the consecutive ten-year mandatory minimum on Count III or to the Guidelines sentencing range.  See Santiago, 775 F.3d at 108.  Nor did counsel object during the sentencing hearing.  See generally Sent. Hr'g. Tr.  At that hearing, defense counsel made no specific sentencing recommendation.  See id. at 43.

Given the First Circuit's ruling that Santiago's substantial rights were not violated, however, it is hard to fault counsel for failing to object to the consecutive sentence on Count III or argue for a concurrent sentence.  See United States v. Cabrera, 215 F.3d

---

So the Defendant's advisory guideline range at [offense] level 41 and criminal history category of 6, on Counts I and II the guideline range is 360 months to life imprisonment; and on Count III, a minimum of 10 years consecutive to the penalties on Counts I and II.  Those are the guideline calculations.

Tr. of Feb. 13, 2014, Sentencing Hr'g (ECF No. 417, "Sent. Hr'g Tr.") 10.  The PSR also set forth the minimum penalty Santiago faced on Count III.  PSR ¶¶ 105, 106.  Counsel stated that he had reviewed the PSR with Santiago and answered his questions.  Sent. Hr'g. Tr. 2.

1312, 2000 WL 227937, at *1 (1st Cir. 2000) (unpublished) ("Cabrera's first ineffective assistance of counsel claim fails because the substantive argument clearly would not have succeeded." (citing Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) ("Obviously, counsel's performance was not deficient if he declined to pursue a futile tactic."))). And the law was far from clear on issue of whether § 924(c)(1)(A) mandated a consecutive sentence for a § 924(j) violation or not, which Santiago recognizes. See Santiago Mem. at 7 ("It was well-established in February of 2014, that federal courts were split on the issue of whether a sentence under §924(j) applied concurrent or consecutive [sic]."). The First Circuit recognized that split:

> We recognize . . . that our sister circuits are split on whether § 924(j) incorporates by reference § 924(c)'s prohibition on concurrent sentences for the underlying crime of violence and the felony murder sentence. See, e.g., United States v. Berrios, 676 F.3d 118, 139 (3d Cir. 2012) (adopting the majority rule that § 924(j) does prohibit concurrent sentences); United States v. Julian, 633 F.3d 1250, 1253 (11th Cir. 2011) (adopting the opposite rule). We have not decided this issue one way or the other, and need not today, given that the district court only used its discretion to impose consecutive sentences.

United States v. Garcia, 792 F.3d 184, 194 n.14 (1st Cir. 2015) ("Garcia III");[5] see also Julian, 633 F.3d at 1257 (stating that

---

[5] The First Circuit later affirmed its determination that the district court acted within its discretion in imposing consecutive

court was "unpersuaded by the decisions of the Eighth and Tenth Circuits that sentences imposed under section 924(j) must run consecutively based on section 924(c)(1)(D)(ii) (citing United States v. Dinwiddie, 618 F.3d 821, 837 (8th Cir. 2010); United States v. Battle, 289 F.3d 661, 668 (10th Cir. 2002)); Dinwidddie, 618 F.3d at 837 (rejecting argument that consecutive sentence provision of § 924(c) does not apply to sentences under § 924(j) based on circuit precedent); Battle, 289 F.3d at 669 (agreeing with Eighth Circuit that "§ 924(c) unambiguously mandates the imposition of a consecutive sentence 'in addition to' the punishment ordered for the use of a firearm during the commission of a crime of violence where the evidence demonstrates the existence of the aggravating sentencing factors set forth in § 924(j)"), overruled by United States v. Melgar-Cabrera, 892 F.3d 1053, 1060 (10th Cir. 2018).

"It is only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it, that the ineffective assistance prong is satisfied." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (internal quotation marks omitted). It was not "patently unreasonable" for counsel to decline to object to the imposition

_____

sentences under § 924(c) and § 924(j). Garcia IV, 904 F.3d at 110.

14

of consecutive sentences given the uncertain status of the law on the interaction of § 924(c) and § 924(j).  Circuit courts which had addressed the question were divided.  See Garcia III, 792 F.3d at 194 n.14.  The First Circuit had not decided the issue, although it had recognized a court's discretion to impose a consecutive sentence in similar circumstances.  See id.; see also id. at 193-34 (noting that "since the district court was merely exercising its discretion to impose consecutive sentences, Garcia's argument that the court erred in thinking it *had* to impose them is misplaced").

And it is clear from the transcript that counsel's strategy at the sentencing hearing was to focus on the circumstances of Santiago's life and his remorse.  See Sent. Hr'g. Tr. at 37-40. Counsel argued:

> Your honor, the government has characterized Mr. Santiago as a career criminal and under the sentencing guidelines in the eyes of the law that may very well be true.  However, I would boldly suggest to the Court that Mr. Santiago himself is, in fact, a victim here today. He's a victim of his own behavior, his actions and his inactions.  He's a victim of the behavior of others, those Co-Defendants with whom he associated himself in this case and likely many other people throughout his life.
>
> But Mr. Santiago wasn't born an evil man.  He wasn't born a career criminal.  Mr. Santiago is a victim to the life circumstances upon which he has endured. . . .

15

Id. at 38-39.  Counsel recounted Santiago's troubled youth, family situation, abuse, domestic violence, substance abuse, and limited intelligence and education, see id. at 39-41, and asked the Court "to take all of these factors and circumstances into deliberate account when determining what's appropriate and just for Mr. Santiago," id. at 43. Counsel emphasized that Santiago was "deeply sorry" for the loss of the victim, id. at 38, and that he "felt a duty" to apologize to the victim's family, id.  Finally, counsel asked the Court to "have mercy on Mr. Santiago."  Id. at 44.

Counsel made a tactical decision to make an emotional appeal to the court.  Such decisions are not to be second-guessed with the benefit of hindsight.  See Knight v. Spencer, 447 F.3d at 15 (citing Strickland, 466 U.S. at 689).  Rather, "there is a strong presumption that counsel's strategy and tactics fall within the range of reasonable professional assistance . . . ."  Id. (internal quotation marks omitted).  Adding a legal argument, such as the one Santiago faults counsel for failing to make, may well have taken away from the emotional impact of counsel's appeal.  See Strickland, 466 U.S. at 689 (noting that petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy") (internal quotation marks omitted).

16

The Court holds that Santiago has not met his burden of proving that counsel failed to provide "reasonably effective assistance under the circumstances then obtaining." Natanel, 938 F.2d at 310.  Given this conclusion, the Court need not address Strickland's prejudice prong.  See Strickland, 466 U.S. at 687; Reyes-Vejerano, 117 F. Supp. 2d at 106.

Next, Santiago contends that trial counsel provided ineffective assistance by failing to argue at sentencing that he was not a career criminal.  Mot. to Vacate at 6; Santiago Mem. at 9.  Santiago specifically argues that counsel failed to object to the Court's determination that he had two prior felony convictions which qualified as crimes of violence.  Santiago Mem. at 9. Santiago's argument rests on a faulty premise: that he was sentenced as a career offender.  He was not.

The Court began the sentencing hearing by confirming with counsel that he had reviewed the PSR with Santiago and had been able to answer all of Santiago's questions.  Sent. Hr'g. Tr. at 2. Counsel responded affirmatively.  Id.  The Court then heard from counsel and the government as to any objections to the PSR. See id. at 3-9.  Counsel stated that he did not object to the PSR as to the guideline range, but objected to the inclusion in the report of uncharged conduct and charges which had been dismissed.  Id. at 3-5.  Counsel argued that the latter "essentially overstates the

17

size or the extent of [Santiago's] criminal history." Id. at 4. The Court overruled the objection, stating that "it has no bearing on his criminal history computation." Id. at 5. As to counsel's first objection, the government argued that the uncharged conduct was "useful context and background" for the Court and that "[i]t does not have any formal bearing on the calculation of the offense level or the Defendant's criminal history, so therefore it really does not change or translate to any alteration in the guidelines in this case." Id. at 6. The Court agreed and overruled this objection as well. Id. at 7. The Court also denied the government's request for an upward adjustment in Santiago's offense level for having a supervisory role in the offense. See id. at 7, 9. The Court then accepted the PSR and the guideline calculations as stated in the PSR. Id. at 9.

Based on the USSG, the PSR calculated the base offense level as 43. PSR ¶ 14. The only adjustment made was a downward adjustment of two points for acceptance of responsibility, resulting in a total offense level of 41. See id. ¶¶ 22-23. The Court noted that Santiago qualified as a career offender, placing him in criminal history category 6, but that "[he] has 15 criminal history points that are countable and that places him, also, in criminal history category 6." Sent. Hr'g. Tr. at 10.

Under § 4B1.1 of the USSG:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a);[6] see also PSR ¶ 21.  The PSR noted that Santiago had a prior conviction for manufacture/delivery/possession with intent to deliver a Schedule I or II controlled substance, as well as two felony assault convictions,[7] which qualified as convictions for career offender purposes.  PSR ¶ 21.  However,

> [i]n the case of multiple counts of conviction in which at least one of the counts is a conviction other than a conviction for 18 U.S.C. § 924(c) or § 929(a), the guideline range shall be the greater of—
>
> (A) the guideline range that results by adding the mandatory minimum consecutive penalty required by the 18 U.S.C. § 924(c) or § 929(a) count(s) to the minimum and the maximum of the otherwise applicable guideline range determined for the count(s) of conviction other than the 18 U.S.C. § 924(c) or § 929(a) count(s); and
>
> (B) the guideline range determined using the table in subsection (c)(3).

---

[6]  The Court has used the Guidelines Manual in effect on the date of Santiago's sentencing.  See USSG § 1B1.11(a).

[7]  As noted previously, Santiago challenges the inclusion of the two felony assault convictions.  However, as discussed above, whether the felony assault convictions count as crimes of violence is irrelevant to the ultimate guideline calculation.  See USSG § 4B1.1(c)(2).  The Court thus does not address that issue.

USSG § 4B1.1(c)(2);[8] see also PSR ¶ 21.  The PSR calculated
Santiago's guideline range under § 4B1.1(c)(2) as follows:

> In this case, the defendant's guideline range for the
> other counts of conviction is 360 months to life.  Adding
> the mandatory minimum consecutive term of 120 months to
> [] this guideline range results in the guideline range
> of 480 months to life.  As this range is higher than the
> one at subsection (c)(3), which is 292 to 365 months, it
> becomes the guideline range in this case.

PSR ¶ 21.  In short, because Santiago's otherwise applicable
guideline range exceeded the range for a career offender under §
4B1.1(c)(3), he was not sentenced as a career offender, see Sent.
Hr'g. Tr. at 27 ("It's a guideline[] [range] based purely on the
offense conduct and Santiago's criminal history points, which is
calculated solely based upon his convictions."), despite several
references to him as a "career offender" or "career criminal"
during the sentencing hearing, see id. at 5, 10, 17, 23, 28, 38,
39, 49.

Because Santiago was not sentenced under the career offender
provision, whether his two felony convictions qualify as crimes of
violence under Rhode Island law, see Santiago Mem. at 9; Santiago's
Mot. in Opp'n to the Gov't's Mot. to Dismiss and, or Objections to

---

[8] The table in § 4B1.1(c)(3) is the career offender table for
§§ 924(c) and 929(a) offenders.  It provides for a range of 360
months to life where there is no reduction in the base offense
level and for a range of 292 to 365 months where there is a 2-
level reduction.  USSG § 4B1.1(c)(3).

Santiago's 28 USC §2255 Pet. ("Reply") at 5, ECF No. 457, is irrelevant.  The Court's reference to "Santiago's career of 'alleged' violent crimes when applying the sentence," Reply at 4, does not mean that the Court sentenced Santiago as a career offender.  It simply means that the Court considered the entire picture, including Santiago's history and the need to protect the public, as it is required to do.  See 18 U.S.C. § 3553(a).  Further, as noted previously, Santiago had enough countable criminal history points to place him in criminal history category 6 without a career offender designation.  Sent. Hr'g. Tr. at 10, 27; see also PSR ¶ 43.  Counsel cannot be faulted for failing to make an unnecessary argument.  See Vieux, 184 F.3d at 64 ("Counsel is not required to waste the court's time with futile or frivolous motions." (quoting United States v. Wright, 573 F.2d 681, 684 (1st Cir. Cir. 1978))).

Last, the Court rejects Santiago's argument that trial counsel's failure to argue that Hobbs Act robbery is not a crime of violence under § 924(c)(3) rendered counsel's performance ineffective.  In Garcia IV, the defendant argued that his conviction for felony murder under 18 U.S.C. § 924(j) "must be vacated because armed robbery committed in violation of the Hobbs Act, 18 U.S.C. § 1951, does not qualify as a 'crime of violence' under 18 U.S.C. § 924(c)."  904 F.3d at 104.  The defendant reasoned

that Hobbs Act robbery did not qualify as a crime of violence under § 924(c)'s force clause, id. at 105, and, relying on the Supreme Court's decisions in Johnson and Sessions v. Dimaya, 138 S. Ct. 1204 (2018), concluded that § 924(c)'s residual clause was unconstitutionally vague, Garcia IV, 904 F.3d at 106.

The First Circuit found otherwise, holding that, notwithstanding "any possible infirmity of section 924(c)'s residual clause . . . ," id., Hobbs Act robbery "still qualifies as a crime of violence under the force clause of section 924(c)," id.; accord Melgar-Cabrera, 892 F.3d at 1060, 1066. As a result, Johnson and its progeny gave the defendant no relief. See Garcia IV, 904 F.3d at 105.

Santiago makes the same argument here. He contends that "Hobbs Act robbery . . . fails to qualify as a 'crime of violence' under the 'force' clause," Santiago Mem. at 17, and that "[t]he statutory phrase that was declared unconstitutional in Johnson applies equally to the definition of 'crime of violence' in § 924(c)(3)(B)," id. at 18. So, in Santiago's view, his "conviction under § 924(j) should be vacated because a conspiracy to commit a Hobbs Act robbery or Hobbs Act robbery does not qualify as a 'crime of violence' and § 924(c)(3)(B) is void for vagueness and cannot be used to save the conviction." Id. at 19-20 (footnote omitted). Santiago faults trial counsel for "failing to challenge that under

22

_Johnson v. United States_, a Hobbs Act robbery is no longer a 'crime of violence.'" _Id._ at 18 (internal citation omitted).[9]  Santiago also claims that he was prejudiced by counsel's "deficient performance," _id._ at 18, because his sentence would have been reduced by 240 months had he not been convicted under § 924(j), _see id._

Santiago's argument that Hobbs Act robbery is not a crime of violence under the force clause is incorrect, as shown by the First Circuit's decision in _Garcia IV_.  _See_ 904 F.3d 109 (holding that "a conviction for Hobbs Act robbery categorically constitutes a 'crime of violence' under section 924(c)'s force clause").  Counsel cannot be found to have been ineffective for failing to raise a meritless argument.  _Dure v. United States_, 127 F. Supp. 2d 276, 280 (D.R.I. 2001) ("Counsel cannot be deemed ineffective for failing to pursue futile arguments.") (citing _Vieux_, 183 F.39 at 64).  Thus, Santiago's third ground provides no basis for relief. For these reasons, Santiago's Second Motion to Vacate is DENIED.

---

[9] The Supreme Court later determined that the reasoning used in invalidating the residual clause in § 924(e)(2)(B)(ii) in _Johnson_ was equally applicable to § 924(c)(3)(B).  _See_ _United States v. Davis_, 139 S. Ct. 2319, 2336 (2019) (holding that § 924(c)(3)(B) is unconstitutionally vague); _see also_ _id._ at 2325-26 (discussing _Johnson_ and _Dimaya_).  For the reasons stated above, this ruling does not affect the result here.

B.      **Remaining Motions**

Santiago has filed several motions during the pendency of the First Motion to Vacate.  They are, in order of filing: (1) a Motion to Produce Discovery (ECF No. 493); (2) a Motion for Appointment of Counsel (ECF No. 497); (3) a Motion for Appointment of Substitution Counsel (ECF No. 499); (4) a Motion to Supplement and/or Amend 2255 (ECF No. 504); (5) a Motion for Reconsideration (ECF No. 507); (6) a Motion to Amend/Correct Motion to Vacate and for Other Relief (ECF No. 509); (7) another Motion to Appoint Counsel (ECF No. 513); (8) a Motion for Leave to File Newly Discovered Evidence (ECF No. 514); and (9) a Letter/Motion of Inquiry (ECF No. 524).  The Court consolidates its consideration of these motions where possible.

1.      **Motion to Produce Discovery**

A habeas petitioner "is not entitled to discovery as a matter of ordinary course."  Bracy v. Gramley, 520 U.S. 899, 904 (1997); see also Velazquez-Rivera v. United States, 54 F. Supp. 3d 168, 170 (D.P.R. 2014) (quoting Bracy, 520 U.S. at 904).

> Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, states that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."  Generalized statements regarding the possibility of the existence of discoverable material will not be sufficient to establish the requisite "good cause."  The information

24

> sought must be material, and it is material "when there
> is a reasonable probability that, had the evidence been
> disclosed, the result of the proceeding would have been
> different.

Vazquez-Rivera, 54 F. Supp. 3d at 170 (alteration in original)

(internal citations omitted).

> [W]here specific allegations before the court show
> reason to believe that the petitioner may, if the facts
> are fully developed, be able to demonstrate that he is
> . . . entitled to relief, it is the duty of the court to
> provide the necessary facilities and procedures for an
> adequate inquiry.

Bracy, 520 U.S. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286,

300 (1969) (second alteration in original); see also United States

v. Perry, Cr. No. 95-075-JJM, 2017 WL 2437254, at *2 n.2 (D.R.I.

June 5, 2017) (quoting Bracy).  The scope of and extent of any

discovery is left to the discretion of the district court.  Bracy,

520 U.S. at 909.  "A habeas proceeding is not a fishing

expedition."  Teti v. Bender, 507 F.3d 50, 60 (1st Cir. 2007).

In his motion for an order for the production of all discovery

(ECF No. 493, "Motion to Produce Discovery"), Santiago seeks "the

production of all discovery" in his criminal proceeding and this

action, including, "but not limited to," any statements of his co-

defendants and statements "of the Defendant," presumably referring

to himself.  Mot. to Produce Disc. 1.  He claims that he never

received a copy of the government's discovery and, relying on

Federal Rule of Criminal Procedure 16 and Brady v. Maryland,[10] notes the government's "obligation to have provided the defendant with all discoverable tangible object[s]." Id. According to Santiago, he is in "dire need" of the production of all discovery and tangible items in the government's possession "for the perfections of any/all post-conviction releif [sic]." Id.

Santiago's motion fails for many reasons, the most significant of which is his failure to show "good cause" for the materials sought. See Bracy, 520 U.S. at 908. Santiago has not provided "specific allegations," id. at 909; see also Teti, 507 F.3d at 60 (1st Cir. 2007), that would give the Court "reason to believe that . . . he is . . . entitled to relief," Teti, 507 F.3d at 60 (quoting Bracy, 520 U.S. at 908-09) (second alteration in original); see also Velazquez-Rivera, 54 F. Supp. 3d at 170. Instead, "his request is generalized and does not indicate exactly what information he seeks to obtain." Teti, 507 F.3d at 60; see also Velazquez-Rivera, 54 F. Supp. 3d at 170 (noting that generalized statements are insufficient to establish "good cause"). Santiago's Motion to Produce Discovery (ECF No. 493) is DENIED.

---

[10]   373 U.S. 83 (1963).

### 2.    Motions to Appoint Counsel or Substitute Counsel

A convicted criminal has no constitutional right to counsel with respect to habeas proceedings.  Ellis v. United States, 313 F.3d 636, 652 (1st Cir. 2002) (citing Pennsylvania v. Finley, 481 U.S. 551, 555 (1987)).  That said, a district court may appoint counsel for a financially-eligible person seeking relief under 28 U.S.C. §§ 2241, 2254, or 2255 if the court determines that "the interests of justice so require . . . ."  18 U.S.C. § 3006A(a) ((2).  Here, the Court finds that the "interests of justice" do not require the appointment of counsel.

Throughout the course of these proceedings, Santiago has been represented by four different attorneys, including the Assistant Federal Defender.  Since the entry of judgment and his direct appeal, Santiago has been a prolific and able filer of motions.  See generally Docket.  He has also filed replies to the government's responses to the First and Second Motions to Vacate.  See id.  Other than filings related to the Second Motion to Vacate, for which he was represented by the Federal Defender's office, he has filed these documents pro se.  The Court therefore finds that appointment of counsel is not in the interests of justice at this

27

time.  Santiago's motions for appointment of counsel or substitute

counsel (ECF Nos. 497, 499, 513) are DENIED.[11]

### 3.     Motions to Supplement/Amend

Rule 15 of the Federal Rule of Civil Procedure applies to §

2255 proceedings.  Christopher v. United States, 146 F. Supp. 2d

146, 150 (D.R.I. 2001) (citing United States v. Barrett, 178 F.3d

34, 46 (1st Cir. 1999)).  Rule 15 provides that:

> A party may amend its pleading once as a matter of course
> within:
>
> (A)  21 days after serving it, or
>
> (B)  if the pleading is one to which a responsive
> pleading is required, 21 days after service of a
> responsive pleading or 21 days after service of a
> motion under Rule 12(b), (e), or (f), whichever is
> earlier.

Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend

its pleading only with the opposing party's written consent or the

court's leave.  The court should freely give leave when justice so

requires."  Fed. R. Civ. P. 15(a)(2).

> In the absence of any apparent or declared reason—such
> as undue delay, bad faith or dilatory motive on the part
> of the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the
> opposing party by virtue of allowance of the amendment,
> futility of amendment, etc.—the leave sought should . .
> . be "freely given."

---

[11] To the extent the Motion to Amend/Correct Motion to Vacate
and for Other Relief (ECF No. 509, "Second Mot. To Amend and for
Other Relief") requests the appointment of counsel or substitute
counsel, those requests are DENIED.

Gladu v. Maine Dep't of Corrs., 1:19-cv-00315-GZS, 2020 WL 908113, at *1 (D. Me. Feb. 25, 2020) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Christopher, 146 F. Supp. 2d at 150 ("[A]mendment need not be permitted when the proposed amendment would be futile.").

In his first motion to supplement and/or amend his motion to vacate (ECF No. 504, "First Motion to Amend"), Santiago proposes to add sixteen new claims, including: additional allegations of ineffective assistance of trial counsel; ineffective assistance of counsel for the Second Motion to Vacate; incompetence or diminished capacity; involuntary or coerced plea; insufficient evidence to convict; Brady violations; and perjury on the part of a government witness.   First Mot. to Amend 1-2.   Many of these claims overlap with each other or other motions, some are repetitive, most have nothing to do with the claims raised in the First Motion to Vacate, and all are undeveloped, consisting of no more than a single sentence or phrase.   See id.   The "memorandum" in support of the First Motion to Amend includes no argument but merely lists cases or reiterates allegations.   See id. at 2-5.   Santiago's second motion to amend and/or correct the Motion to Vacate and for other relief[12] (ECF No. 509, "Second Mot. to Amend and for Other Relief")

---

[12] The "other relief" will be discussed below.

contains a laundry list of requests, including several to amend the First Motion to Vacate, and is largely incomprehensible.  See generally Second Mot. to Amend and for Other Relief.  Santiago includes many of the allegations presented in the First Motion to Amend.  See id.  Again, these claims overlap, are repetitious, are unrelated to those put forth in the First Motion to Vacate, and/or are undeveloped.

First, as the government notes in its responses (ECF No. 506, "Resp. to First Mot. to Amend"; ECF No. 510, "Resp. to Second Mot. to Amend and for Other Relief"), the claims are untimely, as the deadline for filing the First Motion to Vacate has long passed. Resp. to First Mot. to Amend 3-4; Resp. to Second Mot. to Amend and for Other Relief 4; see also 28 U.S.C. § 2255(f).  Only claims that "relate back" to the original motion may be considered timely. See Turner v. United States, 699 F.3d 578, 585-87 (1st Cir. 2012); see also Fed. R. Civ. P. 15(c).  "Thus, amended habeas corpus claims generally must arise from the same core facts, and not depend upon events which are separate both in time and type from the events upon which the original claims depended." Turner, 699 F.3d at 585 (internal quotation marks omitted).  None of the proposed claims relate back to the First Motion to Vacate, including the additional ineffective assistance of trial counsel claims.  See id. ("The standard cannot be satisfied merely by

raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance.") (internal quotation marks omitted). Further, the prejudice to the government if it had to respond to these unduly delayed, and perhaps futile, allegations would be tremendous. See Gladu, 2020 WL 908113, at *1. The First Motion to Vacate was filed in 2016, and the motions to amend were filed in 2019.

Second, as noted above, none of the claims is developed. See generally First Mot. to Amend; Second Mot. to Amend and for Other Relief; see also Resp. to First Mot. to Amend 2; Resp. to Second Mot. to Amend and for Other Relief 3. "[A] litigant has an obligation to spell out its arguments squarely and distinctly . . . ." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (internal quotation marks omitted); see also id. ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

For these reasons, the First Motion to Amend (ECF No. 504) and Second Motion to Amend and for Other Relief (ECF No. 509), to the extent they seek to amend the First Motion to Vacate, are DENIED.

31

####           4.         Motion for Reconsideration

Santiago moves for reconsideration of "ECF #4431 & 450"[13] under Rule 60(d)(1), Rule 60(b)(4), and Rule 60(d)(3).  Mot. for Reconsideration (ECF No. 507) 1.  He alleges a defect in the integrity of the § 2255 process, see id., presumably related to the Second Motion to Vacate, as well as fraud on the court, see id. at 1-2.  Reading Santiago's Motion for Reconsideration liberally, see Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. U.S. 519, 520 (1972), it seems he also challenges the integrity of the proceedings relating to the First Motion to Vacate.

Rule 60 provides in relevant part:

. . .

(b) **Grounds for Relief from a Final Judgment, Order, or Proceeding.**  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

    . . .

    (3) fraud (whether previously called intrinsic or extrinsic);

---

[13] Presumably, Santiago is referring to ECF No. 443, which is the First Motion to Vacate.  ECF No. 431 is a motion to seal filed by the government.  ECF No. 450 is the counseled Second Motion to Vacate, and the Court assumes Santiago seeks reconsideration of the Order (ECF No. 496) denying that motion.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (noting that pro se documents are to be "liberally construed"); Haines v. Kerner, 404 U.S. 519, 520 (1972).

> (4) the judgment is void;
>
> . . .
>
> . . .
>
> (d) **Other powers to grant relief**.  This rule does not limit a court's power to:
>
>> (1)  entertain an independent action to relieve a party from a judgment, order, or proceeding; [or]
>>
>> . . .
>>
>> (3) set aside a judgment for fraud on the court.

Fed. R. Civ. P. 60.[14]

Santiago presents a plethora of allegations, none of which is supported in any way.  For example, he lists fraudulent misrepresentations by trial and § 2255 appointed counsel constituting extrinsic fraud upon the court, lack of candor before the court, and fraudulent concealment and omissions by counsel; fraudulent misrepresentation by the prosecution and omissions as to material facts, and "vexatious" and bad faith position of the government during the § 2255 proceeding; and denial of due process and defects in the integrity of the § 2255 process, aimed at the

---

[14]   Although Santiago does not list Rule 60(b)(3) in the heading of his Motion for Reconsideration, the Court includes it because of his references to "extrinsic fraud" on the Court.  <u>See</u> Mot. for Reconsideration 1-2.

"judicial machinery" so it could not function, and judicial deception practiced on the court by appointed counsel and the government.    Mot. for Reconsideration 1-2.    Santiago adds allegations seemingly unrelated to the Second Motion to Vacate, including extrinsic fraud on the court in the inducement of his guilty plea, and fraudulent misrepresentation by counsel and fraudulent omission by the government, apparently related to his plea; false proffering of false testimony of his co-defendant and a "deal" made with the co-defendant to implicate Santiago; fraudulent misrepresentation and omission in the PSR; vagueness of the career offender provisions of the USSG and misapplication of the career offender designation, prejudicing Santiago; lack of competency, fraudulent concealment or conflict of interest of counsel, and professional negligence; and denial of Santiago's rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments.    Id. at 1-4.

First, to the extent that Santiago seeks reconsideration of the First Motion to Vacate, no final judgment or order has issued with respect to that motion, as of the filing of the Motion for Reconsideration.    See Rule 60(b), (d).    There is thus no final judgment or order to reconsider.    See id.    Any Rule 60(b) or (d) motion related to the First Motion to Vacate is premature and must be denied.

34

As for the Second Motion to Vacate, Santiago has provided no support for his allegations.  For example, he does not state what "fraudulent misrepresentations" were made to the Court by counsel or the prosecution or how the Court was defrauded; how counsel exhibited lack of candor and what was concealed and omitted; how the prosecution exhibited "bad faith"; how the Court was deceived or what "defects" in the § 2255 proceedings affected the functioning of the "judicial machinery"; and how his due process rights were impacted.  See Zannino, 895 F.2d at 17 (noting litigant's obligation to "spell out its arguments squarely and distinctly . . .").

Finally, Santiago's other allegations would seem to be more appropriately made in a motion to amend the First Motion to Vacate. And most, if not all, of his claims are included in his various motions to amend and have already been addressed.[15]  For the reasons stated above, the Motion for Reconsideration is DENIED.

---

[15]  To the extent that Santiago seeks to add new [c]laims, he cannot do so through a Rule 60(b) motion.  "[I]t is the substance of the petition, rather than its form, that governs." Sanchez v. United States, Cr. No. 00-141-WES, 2019 WL 2526727, at *4 (D.R.I. June 19, 2019) (alteration in original).  A motion which presents new grounds challenging the constitutionality of the underlying conviction is treated as a second or successive habeas petition under AEDPA.  See Munoz v. United States, 331 F.3d 151, 152 (1st Cir. 2003) ("[A] Rule 60(b) motion that principally challenges the constitutionality of a habeas petitioner's underlying conviction should be treated as a second or successive habeas petition under the [AEDPA].") (citations omitted); see also Gonzalez v. Crosby,

### 5.     Motion for Leave to File Newly Discovered Evidence

Santiago seeks leave to file what he characterizes as "newly discovered evidence of statutory interpretation[.]" Mot. for Leave to File Newly Discovered Evidence of Statutory Interpretation (ECF No. 514, "Mot. for Leave") 1.  Alternatively, he moves to reopen his notice of appeal or reopen time for notice of appeal, see id. at 1, 3, presumably referencing his appeal of the denial of the Second Motion to Vacate.   The "newly discovered evidence of statutory interpretation" to which Santiago refers is the Supreme Court's decision in United States v. Davis, 139 S. Ct. 2319.  In Davis, the Court, following its reasoning in Johnson and Dimaya, found that § 924(c)(3)(B) is unconstitutionally vague.  Id. at 2325-26, 2336.  Santiago wishes to add this "evidence" to the third ground for relief in the First Motion to Vacate.  Mot. for Leave 2.

As for the first part of Santiago's motion, the court finds it unnecessary and thus moot.  The Court has already discussed why counsel did not provide ineffective assistance by "failing to challenge that under Johnson v. United States, a Hobbs Act robbery is no longer a crime of violence." discussion supra section III.A.

---

545 U.S. 524, 532 (2005) (discussing distinction between Rule 60(b) motion which "attacks . . . the substance of the federal court's resolution of a claim on the merits" and those which attack "some defect in the integrity of the federal habeas proceedings").

at 22-23 (internal quotation marks omitted); see also id. at 23-24.  The Court included the Supreme Court's Davis opinion in that discussion.  See id. at 23 n.10.  The Johnson and Davis decisions invalidating the "residual clause" in the ACCA and § 924(c), respectively, do not aid Santiago, because the First Circuit has ruled that Hobbs Act Robbery is a crime of violence under the "force" clause.  Garcia IV, 904 F.3d at 109.  Allowing the Motion for Leave would also be futile.

     As for Santiago's request to "reopen" his notice of appeal of the Court's denial of the Second Motion to Vacate, or, apparently, reopen the time for filing a notice of appeal, those proceedings ended over a year ago.  See Docket.  And it appears that Santiago has already filed the request in the First Circuit.  Notice of Appeal (ECF No. 512).  The Court of Appeals issued a judgment on November 15, 2019 (ECF No. 521), and its Mandate (ECF No. 522) issued on January 6, 2020.  As the government states in its consolidated response to this and other motions, it seems that Santiago's "only recourse at this juncture is to move the First Circuit for permission to file a second or successive § 2255 petition."  Consolidated Resp. (ECF No. 516) 2 (citing Bucci v. United States, 809 F.3d 23, 25-26 (1st Cir. 2015)); see also United States' Renewed Response to Pet.'s Filing at ECF 524 (ECF No. 540,

"Renewed Response") 2.   The Motion for Leave (ECF No. 514) is DENIED as moot.

### 6.    Motion for Other Relief

The Second Motion to Amend and for Other Relief (ECF No. 509) consists of a number of documents filed twice.  See Docket.  The first portion of the motion—including requests for appointment of counsel, for reconsideration, and to amend the Second Motion to Vacate—has already been addressed and need not be discussed again. The second part of the motion, as best the Court can decipher, contains these requests for relief: an extension of time to amend the First Motion to Vacate; a Certificate of Appealability ("COA"); a competency evaluation; a request for guardian ad litem; and a mental health evaluation.   Santiago also claims that the Career Criminal Guideline is unconstitutionally vague; that he is actually and factually innocent of the crime to which he pleaded guilty; and that his guilty plea was not knowingly and voluntarily entered and should be withdrawn.  See generally Mot. For Other Relief.

The request for an extension of time is denied because the Court has already denied Santiago's various motions to amend.  The request for a COA is denied because Santiago has not established the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).  It is also unclear what Santiago wishes

to appeal.  The requests for a competency evaluation and for guardian ad litem are denied; Santiago has not shown a need for such evaluation or guardian.  The request for a mental health evaluation is denied; Santiago is in the custody of the Bureau of Prisons, and any such motion should be directed there.

Santiago's challenge to the Career Offender Guideline fails for two reasons.  First, as discussed, Santiago was not sentenced as a career offender, despite his belief to the contrary.  Second, in Beckles v. United States, 138 S. Ct. 886 (2017), the Supreme Court held that the advisory Guidelines were not subject to a vagueness challenge on due process grounds and that § 4B1.2(a)'s residual clause was not void for vagueness.  Id. at 895.  This portion of the motion for other relief is denied.

Santiago's claim that he is actually and factually innocent of the crime for which he was convicted is belied by the facts elicited at the change of plea hearing, which Santiago did not deny.  The Court asked the government to put on the record the facts it would prove if the case were to go to trial and warned Santiago to listen carefully to the recitation of the facts because he would be asked to agree if those were the facts of the case. Plea Hr'g. Tr. at 12.  The government stated that, had the matter gone to trial, it would have introduced evidence and testimony that would have established these facts beyond a reasonable doubt:

Early in the morning of September 20th, 2010, the
Defendant and Kelley Lajoie drove a white box truck
registered to Randy Lewis from Springfield,
Massachusetts to Woonsocket, Rhode Island. During that
same time frame, Jason Pleau drove his tan Chevrolet
Malibu from his home on Lisbon Street in Providence to
Woonsocket, Rhode Island.

As Pleau, Santiago and Lajoie made their way to
Woonsocket, the Defendant and Pleau were involved in
telephone contact with each other. Pleau (sic)[16] used
his cell phone registered in the name of Tony Cruz,
number 401-481-2373. Pleau used his cell phone ending
with number 1082 and Santiago's girlfriend, Kelley
Lajoie, had a cell phone in her name ending with 7041.

The three individuals eventually met on Coe Street in
Woonsocket. They parked the white box truck there and
entered Pleau's vehicle, the gold Chevy Malibu. Pleau,
Santiago and Lajoie went to the Shell gas station located
at 1325 Diamond Hill Road in Woonsocket, Rhode Island
where they purchased some items. Santiago spoke to the
cashier, Sarah Berthiaume, with whom he was acquainted.
While at the Shell gas station, Santiago and Pleau took
note of a vehicle they believed belonged to the manager
of the gas station. After stopping there, they returned
to Coe Street. Santiago and Pleau changed shoes.
Santiago put on Pleau's work boots --

. . .

After stopping at the Shell gas station, they returned
to Coe Street. Santiago and Pleau changed shoes.
Santiago put on Pleau's work boots, and Pleau wore
Santiago's Fila sneakers. Santiago took off in the white
box truck and drove to Plaza Village. He parked the
truck at the end of the cul-de-sac off of Village Road
abutting the woods behind Citizens Bank.

Pleau and Lajoie drove in Pleau's gold Malibu to Diamond
Hill Road. Pleau got out of the car in the vicinity of

---

[16] Presumably, the government meant to refer to Santiago, not
Pleau, at this point.

40

the Citizens Bank and Lajoie drove to the parking lot across from the Shell gas station.

Pleau and Santiago knew that the gas station's deposits would be made at the Citizens Bank on Diamond Hill Road located a short distance from the gas station.  It was known to or foreseeable to the Defendant that Pleau would bring a firearm to the robbery.

For the next two-and-a-half hours, Santiago, Pleau and Lajoie waited in their respective locations for David Main, the manager of the Shell gas station, to leave the station and make his way to the bank.  During this time frame, the Defendant, Pleau and Lajoie exchanged numerous phone calls and text messages.

Shortly after 11:00 a.m., David Main left the station to deposit its weekend proceeds.  Pleau was alerted to Mr. Main's arrival to the bank by a phone call from Kelley Lajoie.  Lajoie then drove Pleau's tan Malibu to Pleau's home and waited for her partners to arrive.
When Mr. Main arrived at the Citizens Bank parking lot and got out of the car, Pleau, who was armed with a firearm and had a dark ski mask over his head, approached Mr. Main and demanded that he turn over the money.  Mr. Main ran from Pleau towards the front door of the bank. Pleau chased Mr. Main and repeatedly fired the revolver at him.  Mr. Main was struck in the head by one bullet and collapsed at the front entrance of the bank.  Pleau then grabbed the green Citizens Bank bag, which contained about $12,540, and fled to the rear of the bank.

Pleau ran from the bank through the woods and into the rear of the white box truck driven by the Defendant. The Defendant left Plaza Village, turning onto Mendon Road, and then onto Elder Ballou Road and made his way to Route 146 south towards Providence.

On Elder Ballou Road, the Defendant pulled the truck over momentarily and secured the rear door of the truck.

Santiago, the Defendant, drove the truck to Pleau's hose located at 14 Lisbon Street in Providence, Rhode Island.

There they met up with Kelley Lajoie, as well as Tanya Rivera, Pleau's girlfriend.

While at the residence, the Defendants heard news of the robbery on television. They divided the money taken from the robbery. Pleau and Santiago discarded their shoes and Pleau discarded his clothes. They also took some cleaning supplies to use on the truck.

The Defendant, Pleau and Lajoie left 14 Lisbon Street in the white box truck and Chevy Malibu and drove a few blocks away to the intersection of Alton and Andem Street in Providence. There they wiped down the truck and left it parked on the side of the road.

Pleau, the Defendant and Lajoie drove towards Pawtucket, Rhode Island. On their way, they threw away a garbage bag with the clothes and shoes that had been worn to the robbery.

In Pawtucket, they met Lajoie's brother, Richard Fortier, and Lajoie's children. After meeting them, they all drove to an apartment complex called Austin Place. After dropping off Fortier and Lajoie's children, Pleau parked the car in the adjacent parking lot. Pleau, the Defendant and Lajoie remained in the car for about 15 minutes discussing their plans and then parted ways. Pleau returned to Providence. Defendant and Kelley Lajoie went into Fortier's house.

Plea Hr'g. Tr. at 14-18.

The Court then asked Santiago if he agreed that those were the facts of the case. Santiago agreed. Id. at 20. The Court again asked if there was anything the government had related that Santiago thought was incorrect or untrue. Id. Santiago said no. Id. at 20-21. Given the above facts, which Santiago did not deny, his assertions of actual innocence amount to empty words.

Nor has Santiago met the standard for an actual innocence claim. A "gateway" actual innocence claim (to have a procedurally defaulted claim heard on the merits) requires a petitioner "to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995). To establish the requisite probability, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).

Santiago has put forth no new evidence of factual innocence to undermine the facts recited above. See Schlup, 513 U.S. at 324 ("To be credible such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."). Santiago's "additional evidence," as noted above, is the Supreme Court's recent decision in Davis, 139 S. Ct. 2319. His arguments go to legal, not factual, innocence. See generally Santiago Mem.; see also Bousley, 523 U.S.at 623. Santiago thus has not made the

43

requisite showing.  See Barreto-Barreto v. United States, 551 F.3d 95, 102 (1st Cir. 2008) ("The petitioners raise a purely legal argument concerning an issue of statutory interpretation.  The petitioners do not present any new evidence to show their 'factual innocence.'  They have failed, therefore, to present a colorable claim of actual innocence.").

"[T]enable actual-innocence gateway pleas are rare[.]" McQuiggan v. Perkins, 569 U.S. 383, 386 (2013); see also House v. Bell, 547 U.S. 518, 538 (2006) ("[T]he Schlup standard is "demanding and permits review only in the 'extraordinary' case."). And the standard for a gateway actual innocence claim "carr[ies] less of a burden" than a freestanding claim.  Schlup, 513 U.S. at 316.  Because Santiago has failed to meet the Schlup standard, he cannot meet a higher standard for a freestanding actual innocence claim.  The Court rejects Santiago's actual innocence claim.

Moreover, Santiago's contention that his plea was not knowingly and voluntarily entered is also contradicted by his testimony at the change of plea hearing.  The first question the Court asked was "I just want to make sure, is this what you want to do," Plea Hr'g. Tr. at 2, to which Santiago responded, "Yes," id.  The Court then asked Mr. Santiago several questions about his background, including whether he had been treated recently for any mental illness.  Id. at 3.  Santiago stated that he had had not.

Id.  Santiago responded negatively when asked if anyone had made promises or threatened him to get him to plead guilty.  Id. at 5. Next, the following exchange occurred:

> Q.   Is it your decision to plead guilty a completely voluntary decision that you're making because you think it's in your best interest to do this?
>
> A.   Yeah.  It's the right thing to do.

Id.  After hearing the maximum statutory penalties that applied to the charges to which Santiago was pleading guilty and an explanation about the Sentencing Guidelines, id. at 6-10, the Court turned to the rights Santiago would be giving up by forgoing a trial and pleading guilty, id. at 10.  The Court explained each right a defendant has during trial proceedings, then asked:

> Q.   Now, by entering a plea of guilty today, you're giving up each and every one of these constitutional rights that I just went through with you and you're saying to the Court that you do not want a trial in this case.  In other words, you're saying to me you want this process to stop; you do not want to continue on to trial, which is scheduled to start; and you want to give up all of these rights.  Now is that what you want to do?
>
> A.   Yes.

Id. at 12.

Similarly, as for Santiago's allegation that his plea was not knowingly made, the transcript again tells the story.  The Court asked Santiago whether he understood that he must answer truthfully and that failure to do so could lead to additional charges against

45

him; whether he fully understood all the charges against him;
whether he understood that by pleading guilty to felony offenses
he could be deprived of civil rights such as the right to vote;
whether he understood the maximum statutory penalties that could
be imposed against him, following the government's recitation;
whether he understood what supervised release meant, that there
would be a term of supervised release following incarceration,
that he would have to comply with certain conditions, and if he
failed to comply it could lead to additional prison time; whether
he understood that there was a special assessment of $100.00 for
each count which Santiago would have to pay; and whether he
understood that the Sentencing Guidelines were advisory, not
mandatory, and that anything he had been told about how the
Guidelines applied in his case were just estimates. Id. at 3-9.
With respect to the Guidelines, the Court reiterated:

> Q. So once again, if it turns out that the actual
> guideline applications are higher than any estimates
> that you've been given, you don't get to take back your
> plea of guilty once you enter it today. Do you
> understand all that?
>
> A. Yes, I do.

Id. at 9. The Court further questioned Santiago whether he
understood that there was no parole in the federal system, meaning
that whatever sentence he received was what he would serve, and
that under some circumstances either he or the government may have

the right to appeal the sentence imposed.  Id. at 9-10.  To all of the above questions, Santiago replied affirmatively.[17]  See id.

The Court then addressed the trial rights Santiago would be giving up if he pleaded guilty to "make sure [Santiago] understood that [he was] waiving these rights by entering the plea." Id. at 10.  The Court explained those rights at length and asked Santiago if he understood his rights and the trial process.  Id. at 10-11.

Next, the Court asked the government to state for the record the legal elements it needed to prove in order to find Santiago guilty, as well as a statement of the facts the government would prove were the case to go to trial.  Id. at 12.  The government listed the elements of each of the charges and described the facts in detail.  Id. at 12-20.  As noted above, Santiago agreed that those were the facts of the case.  Id. at 20.

Given Santiago's allegations that he did not kill anyone or know that his co-conspirator had a gun, the Court highlights two portions of the government's recitation, to which Santiago agreed. First, in describing the elements of the offenses with which Santiago was charged, the government stated:

> [D]uring the commission of the robbery or in furtherance thereof, a firearm was used, brandished and discharged; use of the firearm resulted in death; the killing

_____

[17]  By the Court's count, Santiago agreed that he understood the Court's questions during the colloquy at least eighteen times. See Plea Hr'g. Tr. 3-25.

47

constituted murder in the first degree in that it was
committed in the perpetration of a robbery.

Id. at 14.   Thus, Santiago was well aware that he was "pleading
guilty to carrying, using and discharging a firearm during and in
relation to a federal crime of violence, death resulting . . . ."
Id. at 13.   Second, during its recitation of the facts, the
government stated that "[i]t was known to or foreseeable to the
Defendant that Pleau would bring a firearm to the robbery."   Id.
at 16.   Again, Santiago agreed that he knew, or could have
foreseen, that his co-conspirator would bring a gun to the robbery.

At any point during the plea colloquy, Santiago could have
stopped the proceedings.   He could have said that he did not
understand.   He could have asked questions, either of the Court or
counsel.   He did none of those things.   Rather, when the Court
asked Santiago "how [he] wish[ed] to plead to the three charges
against [him], guilty or not guilty," id. at 21, Santiago replied,
"Guilty," id.   The Court then stated its finding:

> It is the finding of his Court in the case of the United
> States versus Jose Santiago that the Defendant is fully
> competent and capable of entering an informed plea; that
> the Defendant is aware of the nature of the charges
> against him and the consequences of his plea; that his
> plea of guilty is a knowing and voluntary plea that is
> supported by an independent basis in fact and contains
> each of the essential elements of the offense.   The
> Defendant's plea is therefore accepted, and he is hereby
> adjudged guilty of those offenses.

Id.

Santiago has provided no reason to revisit this finding, other than his own unsupported allegations that his plea was not voluntarily and knowingly entered and that he did not understand the proceedings or to what he was pleading guilty. See Dure v. United States, 127 F. Supp. at 280 (noting that defendant's claims consisted of "vague, unsupported and conclusory allegations"). This portion of the Motion for Other Relief is denied. For these reasons, the Motion for Other Relief (ECF No. 509) is DENIED in its entirety.

### 7.   Letter/Motion of Inquiry

Lastly, Santiago has filed a Letter/Motion of Inquiry (ECF No. 524, "Motion of Inquiry"). Santiago seeks information as to whether he has a "'Davis' Type Issue" in his case and, if so, appointment of counsel to assist him in preparing and filing a motion based on Davis. Mot. of Inquiry 1 (citing Davis, 139 S. Ct. 2319). Santiago has raised the Davis question in a previous motion, and the Court has already discussed the Supreme Court's decision in Davis. See discussion supra section III.B.5. at 36-37; see also id. supra section III.A. at 26 n.10. The Motion of Inquiry (ECF No. 524) is thus redundant and is DENIED.

## IV.  Conclusion

For the reasons stated above, Santiago's First Motion to Vacate (ECF No. 443) is DENIED and DISMISSED. All remaining

49

motions (ECF Nos. 493, 497, 499, 504, 507, 509, 513, 514, 524) are DENIED for the reasons stated.

## RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts, this Court hereby finds that this case is not appropriate for the issuance of a certificate of appealability (COA) because Santiago has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Santiago is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. See Rule 11(a), Rules Governing Section 2255 Proceedings.


IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date:  June 16, 2021